UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

BRANDY PENA, DAEREON FRIDAY,  :
SHAUKAT ALI, ARIFUL ISLAM, AHMED  :
SHAIBI, IBUKUN OYEBAMIJI and ISMAIL  :  **ORDER AND OPINION**
BOURRICH, individually and on behalf of all  :  **GRANTING SUMMARY**
others similarly situated,  :  **JUDGMENT TO**
:  **DEFENDANTS**
Plaintiffs,  :
:  24 Civ. 5893 (AKH)
-against-  :
:
THE CITY OF NEW YORK, DAVID DO,  :
Chairperson of the NYC Taxi and Limousine  :
Commission, SHERRYL ELUTO, Deputy  :
Commissioner the NYC Taxi and Limousine  :
Commission, and MOHAMMED AKINLOLU,  :
Associate Commissioner for Prosecution for the  :
NYC Taxi and Limousine Commission,  :
:
Defendants.  :

-------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs, a putative class of drivers licensed by the New York City Taxi and

Limousine Commission ("TLC"), filed suit against the City of New York; David Do, Chair of

the TLC; Sherryl Eluto, General Counsel and Deputy Commissioner of the TLC; and

Mohammed Akinlolu, Associate Commissioner for Prosecution for the TLC, on August 2, 2024,

alleging malicious prosecution claims under 42 U.S.C. § 1983[1] and the unlawful suspensions of

TLC licenses. I have jurisdiction under 28 U.S.C. §§ 1331, 1343.

Both sides seek summary judgment. For the reasons discussed below, Plaintiffs'

motion is denied and judgment is entered for Defendants.

---

[1] Plaintiffs consent to the dismissal of their state law claims without prejudice, based "on defendants correct
assertion that plaintiffs failed to comply with notice-of-claim requirements[.]" ECF No. 78 at 3 n.4.

1

## BACKGROUND

Pursuant to N.Y.C. Admin. Code § 19-512.1(a), "[t]he commission … may, for good cause shown relating to a direct and substantial threat to the public health or safety and prior to giving notice and an opportunity for a hearing, suspend a taxicab, for-hire vehicle license or a HAIL license issued pursuant to this chapter and, after notice and an opportunity for a hearing, suspend or revoke such license." N.Y.C. Admin. Code § 19-512.1(a). Pursuant to TLC Rules and Regulations, the "Chairperson"[2] "can summarily suspend a License if the Chairperson believes that continued licensure would constitute a direct and substantial threat to public health or safety, pending revocation proceedings." 35 R.C.N.Y. § 68-15(a)(1). Additionally, under TLC Rules and Regulations, the TLC "Chairperson can summarily suspend a License based upon criminal charges pending against a Licensee if the Chairperson believes that the charges, if true, would demonstrate that continued licensure would constitute a direct and substantial threat to public health or safety. Such charges include but are not limited to" any felony or any of 18 specified offenses. 35 R.C.N.Y. § 68-15(d)(1).

Drivers may request a hearing be held in the aftermath of their suspension. *See id.* at § 68-15(d)(4). The hearing must be held within 10 calendar days of receipt of the request, or the next business day thereafter. *See id.* At that hearing, at which both parties may present evidence, the Commission must prove by a preponderance of the evidence that the charges, if true, demonstrate the continuation of the driver's license during the pendency of the charges "would pose a direct and substantial threat to public health or safety." *Id.* at § 68-15(d)(5).

Plaintiffs are TLC licensed drivers who were arrested and subsequently had their TLC licenses suspended in accordance with this framework. *See* ECF No. 47 at ¶¶ 33-39; *see also* ECF No. 64 at 21-23. "The TLC *de facto* suspension process has several steps: an arrest

---

[2] "Chairperson" is defined as "the Chairperson of the Taxi and Limousine Commission or his or her designee." 35 RCNY § 51-03.

2

notification, a suspension notice, a driver hearing request, a notice of hearing and a TLC petition, an OATH hearing, an OATH ALJ report and recommendation, and a chair decision either adopting or rejecting the ALJ recommendation." ECF No. 62-1 at ¶ 10. After a hearing is scheduled, the TLC gathers a summary of the driver's record, arrest report, and sometimes a criminal complaint. *See* ECF No. 62-1 at ¶ 23. TLC prosecutors do not attempt to interview drivers. *See id.* Plaintiffs assert that drivers ultimately prevail in the vast majority of cases. *See* ECF No. 78 at 8 (noting that in the 18 months prior to the second amended complaint, drivers prevailed in 83.3% of all cases, including 89.5% of cases in which a driver was arrested on a misdemeanor charge). Plaintiffs argue this process, as applied, violates their rights to due process and constitutes malicious prosecution. *See* ECF No. 64 at 2, 20.

## STANDARD

A court should grant summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence in the light most favorable to the party opposing summary judgment ... [and] draw all reasonable inferences in favor of that party..." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). Where there is "no triable issue of fact, and ...defendant, although it made no cross motion ... [is] entitled to summary judgment, summary judgment will be entered for defendant." *Procter & Gamble Independent Union*, 312 F.2d at 190; *see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999) ("as long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party, provided that party has had a full and fair opportunity to meet the proposition that there is no

3

genuine issue of material fact to be tried.").

**DISCUSSION**

### I.  *Nnebe v. Daus*

In *Nnebe v. Daus*, the Second Circuit considered whether the TLC suspension regime violated the Due Process Clause of the Fourteenth Amendment.  The Second Circuit held that the fact that an arrest exists provides "sufficient indicia of a threat to public health and safety to permit an immediate suspension" of a TLC license "at a point at which little was known about the driver and the charged crime, provided that the driver would be given a post-deprivation hearing." *Nnebe v. Daus*, 931 F.3d 66, 82–83 (2d Cir. 2019) ("*Nnebe II*") (*citing Nnebe v. Daus*, 644 F.3d 147, 157-58 (2d Cir. 2011) ("*Nnebe I*")).  Furthermore, the Court of Appeals held that post-deprivation hearings provide "the necessary inquiry into the propriety of the suspension in light of the fuller record that can be compiled in the aftermath of the arrest, which might confirm or dispel the initial impression that the driver's continued licensure would pose a threat to the safety of the public." *Id.*

### II.  42 U.S.C. § 1983 Malicious Prosecution Claim

Plaintiffs argue that the TLC's actions constitute malicious prosecution under 42 U.S.C. § 1983.  "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment … and must establish the elements of a malicious prosecution claim under state law[.]" *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).  To prevail "on such a claim under both Section 1983 and New York State law, a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that

4

the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (cleaned up; internal quotations and citations omitted).

## A. Probable Cause

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted). The N.Y.C. Admin. Code allows the TLC to suspend licenses prior to giving notice and an opportunity for a hearing where there is "good cause shown relating to a direct and substantial threat to the public health or safety." N.Y.C. Admin. Code § 19-512.1(a). TLC Rules and Regulations allow the TLC chair to suspend licenses where "continued licensure would constitute a direct and substantial threat to public health or safety, pending revocation proceedings." 35 R.C.N.Y. § 68-15(a)(1). This includes the TLC chair's ability to suspend a license based upon specifically enumerated and pending criminal charges that, if true, "would demonstrate that continued licensure would constitute a direct and substantial threat to public health or safety." *Id.* at § 68-15(d)(1). Each named Plaintiff's license was suspended following an arrest qualifying for summary suspension under 35 R.C.N.Y. § 68-15(d)(1). *See* ECF No. 76 at 15.

In *Nnebe*, the Second Circuit held that the fact that an arrest exists provides "sufficient indicia of a threat to public health and safety to permit an immediate suspension" pending a post-deprivation hearing. *Nnebe II*, 931 F.3d at 82-83 (citation omitted); *see also Nnebe I*, 644 F.3d at 159 (concluding that "in the immediate aftermath of an arrest, when the TLC has minimal information at its disposal and the very fact of an arrest is cause for concern, the government's interest in protecting the public is greater than the driver's interest in an immediate hearing").

Plaintiffs point to high reversal rates. *See* ECF Nos. 47 at ¶¶ 20-22; 78 at 8. However, the fact that suspensions were later lifted does not negate the existence of probable

5

cause at the time proceedings were initiated. *See* 35 R.C.N.Y. § 68-15(d)(5) (requiring the TLC to prove the charges, if true, pose a direct and substantial threat to public health or safety by a preponderance of the evidence standard at summary suspension hearings).

Viewing the record in the light most favorable to Plaintiffs, no reasonable jury could find that Defendants lacked probable cause to initiate or hold suspension proceedings.

## B. Fourth Amendment

Plaintiffs argue that because taxi drivers have a protected property interest in their licenses, TLC's summary suspension process constitutes a violation of the drivers' Fourth Amendment rights. *See* ECF No. 64 at 20.

However, "it is well-established that having to participate in legal proceedings does not in itself amount to a deprivation of a cognizable liberty interest for the purposes of a malicious prosecution claim." *Johns v. Do*, No. 23-CV-3497 (PKC) (SJB), 2024 WL 4171023, at *7 (E.D.N.Y. Sept. 12, 2024). "[W]here a plaintiff is charged in an administrative proceeding, but never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment, there is no deprivation of liberty constituting a Fourth Amendment violation." *Est. of Keenan v. Hoffman-Rosenfeld*, No. 16-CV-0149 (SFJ) (AYS), 2019 WL 3416374, at *8 (E.D.N.Y. July 29, 2019) (citation and quotations omitted), *aff'd*, 833 F. App'x 489 (2d Cir. 2020); *see also Rolon*, 517 F.3d at 147 (rejecting a Fourth Amendment based malicious prosecution claim in a police disciplinary proceeding, noting the Officer "was not imprisoned or detained, and he was never the subject of a criminal prosecution.") (*citing Washington v. Cnty. of Rockland*, 373 F.3d 310, 316-17 (2d Cir. 2004)).

Plaintiffs do not assert they were taken into custody or otherwise detained, only that their licenses, which they have a property interest in, were suspended pending further proceedings. Accordingly, viewing the record in the light most favorable to Plaintiffs, no reasonable jury could find that Defendants' actions violated the Fourth Amendment.

### III.   Unlawful Suspension Claim

It is unclear if Plaintiffs' Unlawful Suspension Claim is a state law claim, and therefore dismissed with their consent, *see* ECF No. 78 at 3 n.4, or if it is a federal claim and not dismissed.  I address it as if a federal claim was intended.

Plaintiffs claim their initial summary suspensions were unlawful "because they violated the TLC's own rules."  ECF No. 78 at 3.  Specifically, Plaintiffs assert that "Defendants suspended Plaintiffs' TLC licenses in violation of TLC rules and without authority from New York because they did so without evidence or belief that their licensure presented a direct and substantial threat to public safety."  ECF No. 47 at ¶ 164.  While Plaintiffs claim "neither New York State nor New York City law provides for the summary suspension of a licensed TLC driver solely based on an arrest," ECF No. 64 at 2, they fail to recognize that such an arrest is "sufficient indicia of a threat to public health and safety to permit an immediate suspension" pending a post-deprivation hearing, under the relevant rules. *Nnebe II*, 931 F.3d at 82-83 (citation omitted); *see also* N.Y.C. Admin. Code § 19-512.1(a).

Accordingly, the summary suspension scheme is lawful under the N.Y.C. Admin. Code.

### CONCLUSION

Plaintiffs' motion for summary judgment is denied, and summary judgment is granted to Defendants.  The Clerk shall tax costs, enter judgment, and terminate ECF No. 62.

SO ORDERED.

Dated:   June 4, 2026
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

7